UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                                    :
RYAN MCCABE, *et al.*,                              :
                                                    :        CASE NO.  4:09-CV-1931
                      Plaintiffs,                   :
                                                    :
vs.                                                 :        OPINION & ORDER
                                                    :        [Resolving Doc. No. 32]
MAHONING COUNTY CHILDREN                            :
SERVICES BOARD, *et al.*,                           :
                                                    :
                      Defendants.                   :
                                                    :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this civil rights action, Defendants Mahoning County, Mahoning County Children Services Board, Children Services employee Brad Price, and Children Services Board members David Ludt, Anthony Traficanti, and John McNally, IV, (collectively "Children Services") move this Court for summary judgment.[1/]  [Doc. 32.]  Plaintiffs Ryan and Trisha McCabe oppose Defendants' motion. [Doc. 36.]  The Defendants have replied.  [Doc. 37.]

For the following reasons, the Court **GRANTS** Defendants' motion for summary judgment and dismisses all claims against all Defendants.

---

[1/] Plaintiffs' complaint also includes defendant Jane Doe, another supervising employee of Children Services. In their summary judgment pleadings, neither Plaintiffs nor Defendants make reference to Jane Doe or Denise Stewart (Jane Doe's true identity). Indeed, Plaintiffs did not amend their complaint to include Denise Stewart. Accordingly, all claims against Jane Doe are dismissed. *See* Fed. R. Civ. P. 4(m) ("If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time.").

Case No.  4:09-CV-1931
Gwin, J.

## I. Background

Ryan and Trisha McCabe are the parents of infant triplets. Despite regular pediatric care, one of the triplets experienced a severe fever eight weeks after their birth and was taken to Tods Children's Hospital for treatment.  [Doc. 36 at 2.]  X-rays showed the child's ribs and skull had been fractured.  [*Id*.]  After seeing the fractures, Dr. Kovalchick, a child advocacy doctor, concluded the child had been abused.  [*Id*. at 3.]  X-rays on the other two triplets revealed similar skull and rib fractures.  [*Id*.]  Dr. Kovalchick then filed a physical abuse report with Mahoning County Children Services.  [Doc. 37 at 3.]

That same day, Children Services caseworker Stephanie Phillips interviewed Ryan and Trisha McCabe, who denied causing their triplet's injuries.  [*Id*.]  Tods Children's Hospital provided caseworker Phillips with the medical records and x-ray reports that suggested the fractures were caused by non-accidental trauma.  [*Id*. at 3-4.]  Later, two additional doctors from the Cleveland Clinic told Phillips the fractures were consistent with non-accidental trauma.  [*Id*. at 4.]  Against this backdrop, Children Services and the McCabes reached an agreement to transfer custody of the McCabe triplets to the triplets' maternal great aunt.  [Doc. 32 at 4.]

Before this incident, nothing suggested the McCabes had abused their children.  [Doc. 36 at 4.]  And Dr. Breichner, the McCabes' pediatrician, who treated the children regularly, had not reported any abuse.  [*Id*.]

Brad Price, the Children Services supervisor, agreed with the allegations. Price says he determined the abuse allegations were substantiated based on medical and x-ray reports from Tod Children's Hospital and the verbal report from the two Cleveland Clinic physicians.  [Doc. 32-3 at 2.]  After receiving the Children Services' finding, the McCabes appealed Price's substantiated

Case No.  4:09-CV-1931
Gwin, J.

disposition, and a different Children Services supervisor affirmed the disposition. [Doc. 32 at 5 n.2.]

After this substantiated disposition was entered, Dr. Breichner, the McCabes' pediatrician, called Price to say that while he felt the McCabes would not harm their children, he was in no position to override the medical and x-ray reports. [Doc. 32 at 20.]  With this information, Children Services filed a complaint with the Juvenile Division of the Mahoning County Court of Common Please seeking a court order awarding custody of the McCabe children to the State of Ohio.  [Id.]

After this dependency complaint was filed, Dr. Sayed El-Azeem, Trisha McCabe's doctor, wrote Children Services a letter saying the fractures may have been caused by brittle bones disease and not physical abuse.  [Doc. 32-7.]  And Dr. Charles Hyman, a California physician that the McCabes retained, wrote Children Services stating a bone defect, not child abuse, may have caused the fractures.  [Doc. 32-6.]

Ultimately, a court vacated the interim custody order granting the triplet's aunt temporary custody, [Doc. 32 at 20], and later dismissed the dependency complaint entirely.  [Id. at 7.]  The court determined "no abuse was done by Ryan and Trisha McCabe . . . ."  [Doc. 32-14.]

The McCabes filed suit in the Mahoning Count Court of Common Pleas on April 23, 2009. Plaintiffs then amended their complaint to include federal claims, and the case was properly removed to this Court on August 17, 2009.

## II. Legal Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008).

Case No.  4:09-CV-1931
Gwin, J.

The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "A fact is material if its resolution will affect the outcome of the lawsuit." *Martingale, LLC v. City of Louisville,* 361 F.3d 297, 301 (6th Cir. 2004) (citing *Daughenbaugh v. City of Tiffin,* 150 F.3d 594, 597 (6th Cir. 1998) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986))). The moving party meets its burden by "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.,* 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)). However, the moving party is under no "express or implied" duty to "support its motion with affidavits or other similar materials negating the opponent's claim." *Id.*

Once the moving party satisfies its burden, the burden shifts to the non-moving party to set forth specific facts showing a triable issue. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). It is not sufficient for the nonmoving party merely to show that there is some existence of doubt as to the material facts. *See id.* at 586. Nor can the non-moving party rely upon mere allegations or denials of its pleadings. Fed. R. Civ. P. 56(e). In responding to a summary judgment motion, the non-moving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1477 (6th Cir.1989) (internal quotation omitted). The non-moving party must adduce more than a scintilla of evidence to overcome the summary judgment motion. *Id.*

In deciding a motion for summary judgment, the Court views the factual evidence and draws

-4-

Case No.  4:09-CV-1931
Gwin, J.

all reasonable inferences in favor of the non-moving party. *Thomas v. Cohen,* 453 F.3d 657, 660 (6th Cir. 2004) (citations omitted). "The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial." *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir. 1987) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 288-89 (1968)). Ultimately the Court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Martingale,* 361 F.3d at 301 (citing *Terry Barr Sales Agency, Inc. v. All-Lock Co., Inc.,* 96 F.3d 174, 178 (6th Cir. 1996)) (internal quotations omitted).

### III. Analysis

### A. State Law Claims

Plaintiffs bring tort claims under Ohio law for intentional infliction of emotional distress, malicious prosecution, negligence, libel and slander, and loss of consortium.  [Doc. 1 at 10-11.] Responding, the Defendants say Ohio Revised Code 2151.421(G) gives them statutory immunity on each state law claim.  [Doc. 32 at 27.]   Plaintiffs, in a terse response, say that only reporters of abuse, not the investigative agency, are entitled to civil immunity under Ohio law.  [Doc. 36 at 16.] Because it is clear that Defendants are entitled to statutory immunity under Ohio law, all Plaintiffs state law claims fail as a matter of law.

Ohio Revised Code 2151.421 requires physicians and employees of a county department of job and family services to report injury or neglect.  O.R.C. 2151.421(A)(1).  The children services board is required to investigate each report of suspected abuse or neglect to determine the cause and circumstances surrounding the incident and the persons responsible.  O.R.C. 2151.421(F).  Anyone

-5-

Case No.  4:09-CV-1931
Gwin, J.

participating in good faith in the making of a report, and anyone participating in good faith in a judicial proceeding resulting from the report, is immune from civil liability. O.R.C. 2141.421(G)(1)(a).

In *Gersper v. Ashtabula County Children Services Bd.*, 570 N.E.2d 1120 (Ohio 1991), the Ohio Supreme Court resolved the exact question presented here: "whether a children services board and a caseworker with the board are immune from civil liability pursuant to former R.C. 2151.421(G), when they have taken affirmative steps to investigate the report of alleged abuse or neglect and have actively participated in a judicial proceeding to secure the safety of the child suspected of being abused or neglected." *Id*. at 1122.  The court held Ohio Revised Code 2151.421(G) "confers immunity upon those who, as a result of a report of a known or suspected incident of child abuse and/or neglect, participate in a judicial proceeding." *Id*. at 1123-24. As amended, Ohio Revised Code 2151.421(G) requires "good faith" participation in the subsequent judicial proceedings. *Id*. at 1122 n.3.  Thus, Defendants are entitled to qualified immunity so long as their actions were in good faith.

In this case, while ultimately wrong in their determination that the McCabes abused their children, all material evidence shows that Children Services acted in good faith both while investigating the report of abuse and while participating in the judicial proceedings that followed. *See Surdel v. MetroHealth Med. Ctr.*, 733 N.E.2d 281, 282 (Ohio Ct. App. 1999) (no bad faith where supervising physician failed to review nurses's diagnostic impression of abuse until after nurse reported abuse to sheriff and accused was prosecuted); *see also Cook v. Hubbard Exempted Village Bd. of Educ.*, 688 N.E.2d 1058, 1061 (Ohio Ct. App. 1996) (bad faith "embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing,

-6-

Case No.  4:09-CV-1931
Gwin, J.

breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud."

(quotation omitted)).

It is undisputed that, upon learning of the potential abuse from Dr. Kovalchik, Children

Services caseworker Stephanie Phillips took affirmative action to investigate the report.  [Doc. 36

at 3-4.]  Caseworker Phillips' supervisor, Defendant Brad Price, a thirty-year veteran of Children

Services, overruled her impression that no abuse had occurred, made a substantiated disposition of

abuse, and referred the case to the Mahoning County Prosecutor's Office.  [Doc 37 at 4.]  Price

determined the allegations "were substantiated based upon medical and x-ray reports from Tod

Children's Hospital and a verbal report from two Cleveland Clinic physicians that Plaintiffs' triplets'

fractures, in various stages of healing, were compatible with non-accidental trauma." [Doc. 32-2 at

5.]

Following the substantiated disposition of abuse, Defendants were provided with

contradictory, but not dispositive, medical evidence.  [Doc 32 at 20.][2] Allowing the case to proceed

to juvenile court hearing, despite the conflicting medical reports, does not evince Defendants' bad

faith participation in the judicial proceedings.  Accordingly, Defendants are entitled to R.C.

2151.421(G) immunity on Plaintiffs' state law tort claims for intentional infliction of emotional

---

[2]For example, Dr.  Hyman, a child forensic pediatrian hired by the McCabes mostly states that the X-ray
indications of abuse could not be determinative:

It is my medical opinion that the McCabe triplets had a diagnosis of child abuse based solely upon
fractures that could be seen both with child abuse and metabolic bone disease. Because there is no
fracture or pattern of fractures that is pathognomonic of abuse and that radiologists can determine
neither the force needed to cause a fracture nor whether these forces were applied accidentally or non
accidentally, radiologists cannot make a definitive diagnosis of child abuse based upon plain film
x-rays.  Fractures in different stages of healing can be seen with child abuse, but is not diagnostic of
child abuse because it can be seen with bone fragility disorders such as the metabolic bone disease of
prematurity and vitamin D deficiency.

[Doc 36-6 at 2.]

Case No.  4:09-CV-1931
Gwin, J.

distress, malicious prosecution, negligence, libel and slander, and loss of consortium. This Court, therefore, grants summary judgment for Defendants on these claims.

### B. Federal Claims

*1. Sections 1985 and 1986*

The McCabes say Defendants entered into a conspiracy under 42 U.S.C. §§ 1985 and 1986 to violate their due process rights. [Doc. 1 at 10.]  Defendants say summary judgment is appropriate because the Plaintiffs failed to allege they are members of a cognizable class or that class-based animus was involved.  [Doc. 32 at 25.]   The Plaintiffs, in their opposition to summary judgment, do not mention § 1985, § 1986, conspiracy, or class-based discrimination.  [Doc. 36.]  Because Plaintiffs do not allege any facts to establish a conspiracy under § 1985, and their § 1986 claim depends upon the existence of a claim under § 1985, the Plaintiffs' Sections 1985 and 1986 claims fail as a matter of law.

The civil rights conspiracy statute, 42 U.S.C. § 1985(3), on which, presumably, the Plaintiffs base their conspiracy claim, requires that there be some racial or other class-based discriminatory animus behind the conspirators' action.  *See Walsh v. Erie County Dept. of Job and Family Services*, 240 F. Supp. 2d. 731, 767 (N.D. Ohio 2003).  The Plaintiffs have loosely alleged the existence of a conspiracy, but their amended complaint does not claim that the alleged conspiracy had a racial or otherwise class-based discriminatory animus. Indeed, when asked if he believed "that the investigation that was made by Children[] Services had anything to do with the fact that you are Caucasian," Plaintiff Ryan McCabe said "No. But I don't know how that's relevant."  [Doc 32-18 at 3-4.] Accordingly, the Court grants summary judgment for Defendants on Plaintiffs' Section 1985 claim.

Case No.  4:09-CV-1931
Gwin, J.

Finally, "§ 1986 claims are derivative of § 1985 claims." *See Russell v. Popper*, 914 F.2d 1494 (Table), at *5 (6th Cir. 1990) (Jones, J., concurring); *Williams v. St. Joseph Hospital*, 629 F.2d 448, 452 (7th Cir.1980). Thus, having granted summary judgment on the Plaintiffs' Section 1985 claim, the Court also grants summary judgment for Defendants on the Plaintiffs' Section 1986 claim.

### *2. Section 1983*

The McCabes say Children Services deprived them of "the valuable basic right of parenting and custody" in violation of their Due Process Clause rights.[3/] [Doc 1. at 10.] Specifically, the Plaintiffs makes claims against: Mahoning County; Mahoning County Children Services Board; Brad Price, in his official and individual capacities; and Board members David Ludt, Anthony Traficanti, and John McNally, IV, in their official capacity.

Essentially, the McCabes say Children Services, acting through employee Brad Price, took their minor children without any reasonable basis to do so. [Doc. 36 at 16.]  Plaintiffs also say that Defendants' investigation of them was so flawed that Defendants are not entitled to statutory immunity under Ohio Revised Code § 2744.  [*Id.* at 12.]  Responding, the Defendants say Ohio statutory immunity is irrelevant in a federal § 1983 action but they are nonetheless entitled to qualified immunity.  [Doc. 37 at 10.]  Defendants also say the Plaintiffs have failed to assert a cognizable § 1983 claim because the Plaintiffs have not suffered a constitutional harm.  [*Id.*]  Because Defendants are entitled to qualified immunity, the Plaintiffs' Section 1983 claim fails as a matter of law.

---

[3/] It is not clear whether Plaintiffs actually intended to bring Sections 1983, 1985, and 1986 claims based on the Ohio Constitution. And Plaintiffs do not once mention the Ohio Constitution in their opposition to summary judgment. Regardless, "due course of law" under § 15 of the Ohio Constitution has the same meaning as "due process of law" under the federal Constitution. Thus, the analysis is the same. *See Walsh v. Erie County Dept. of Job and Family Services*, 240 F. Supp. 2d. 731, 767 (N.D. Ohio 2003).

Case No.  4:09-CV-1931
Gwin, J.

42 U.S.C. § 1983 provides a remedy for deprivations of constitutional and federal statutory

rights when those deprivations take place "under color of any statute, ordinance, regulation, custom,

or usage, of any State or Territory."  Section 1983, however, generally provides state actors with a

qualified immunity from civil damages. *Harlowe v. Fitzgerald*, 457 U.S. 800, 807 (1982).  Qualified

immunity "protect[s] officials who are required to exercise their discretion and the related public

interest in encouraging the vigorous exercise of official activity." *Butz v. Economou*, 438 U.S. 478,

506 (1978).  Indeed, "bare allegations of malice should not suffice to subject government officials

either to the costs of trial or to the burdens of broad-reaching discovery." *Harlowe*, 457 U.S. at 817-

19.

### i. Brad Price in his individual capacity

For purposes of the qualified immunity analysis of Defendant Brad Price in his individual

capacity, the Court assume without determining whether the Plaintiffs have a Due Process Clause

right to "parenting and custody" of their children.[4]  Accepting Plaintiffs' claims of a due process

right in the custody of their children, the issue becomes whether Price's actions are nonetheless

excused because a reasonable children services investigator would not have known he was violating

clearly established law.  The objective legal reasonableness standard requires the Court to analyze

whether a investigator in Defendant Price's position objectively would have understood that he "was

under an affirmative duty to have refrained from such conduct." *Bills v. Aseltine,* 52 F.3d 596, 603

---

[4] Whether such a due process right exists is unsettled. In *Norton v. Cobb*, 744 F. Supp. 2d. 798, 802-03 (N.D. Ohio 1990) the court held a father did not have a constitutionally protected parenting interest in continued association with his child. *Id*. at 802-03. Even if he did, the court continued, only complete permanent physical separation would amount to a cognizable constitutional deprivation. *Id*. But, as explained by the Supreme Court, "the Constitution protects against unjustified government interference with an individual's choice to enter into *and maintain* certain intimate or private relationships." *Board of Directors of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 544 (1987) (emphasis added). And "[n]othing in this pronouncement indicates that complete severance of the relationship is the minimum level of intrusion necessary to trigger protection of this fundamental liberty interest." *Divergilio v. Skiba*, 919 F. Supp. 265, 268 (E.D. Mich. 1996) (internal quotation omitted).

-10-

Case No.  4:09-CV-1931
Gwin, J.

(6th Cir.1995).

First, Price determined the abuse allegations "were substantiated based on medical and x-ray reports from Tod Children's Hospital and a verbal report from two Cleveland Clinic physicians that Plaintiffs' triplets' fractures were compatible with non-accidental trauma." [Doc. 32-3 at 2.] Following Price's substantiated disposition of abuse, Defendant Price was provided with contradictory, but not entirely dispositive, medical evidence.  Dr. Beichner, the Plaintiffs' pediatrician, called Price to say that while he felt the McCabes would not harm their children, he was in no position to override the medical reports.  [Doc 32 at 20.]  On this conflicting evidence, Price could reasonably file a dependency complaint.

Later, Dr. Sayed El-Azeem, Trisha McCabe's doctor, wrote Children Services a letter saying the fractures may have been caused by brittle bones disease and not physical abuse. [Doc. 32 at 21.] And Dr. Charles Hyman of California, without having examined any medical records or x-rays or the triplets themselves, wrote Children Services stating a bone defect, not child abuse, may have caused the fractures. [Doc 32-6.]  Even with this new evidence, Defendant Price reasonably allowed the case to proceed to trial.

Defendant Price's allegation that abuse occurred, while ultimately adjudicated as false, was not objectively unreasonable.  Recall, Price had received a radiologist's report, diagnosing "[m]ultiple posterior and posterolateral bilateral rib fractures in various stages of healing. *This finding is highly specific for non-accidental trauma.*" [Doc.  32-3] (emphasis added). Against this backdrop and given his specific responsibility to protect children, Price acted reasonably in alleging child abuse.  Additionally, as a Child and Family Services employee, Price had no authority to remove McCabe's children, that authority resided exclusively with the Mahoning County Juvenile

-11-

Case No.  4:09-CV-1931
Gwin, J.

Court.  This Court, therefore, grants summary judgment for Defendant Price in his individual

capacity.

ii. *Brad Price in his official capacity, Board members David Ludt, Anthony Traficanti, and John*

*McNally, IV, in their official capacity, Mahoning County, and Mahoning County Children*

*Services Board*

The Plaintiffs make claims against Defendants Brad Price, David Ludt, Anthony Traficanti,

and John McNally in their official capacities. These individuals are employees of Mahoning County.

Additionally, Plaintiffs have sued the Mahoning County Children Services Board.  A suit against a

government employee in his or her official capacity "represent[s] only another way of pleading an

action against an entity of which an officer is an agent."  *Monell v. Dept. of Soc. Servs.*, 436 U.S.

658, 690 n.55 (1978).  Therefore, the Plaintiffs' official capacity claims under Section 1983 are in

fact claims directly against Mahoning County.

A local government such as Mahoning County qualifies as a "person" with respect to § 1983

liability.  *Monell*, 436 U.S. at 690.  However, Mahoning County cannot be held liable under § 1983

on a respondeat superior theory. *Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown*, 520

U.S. 397, 403-406 (1997) ("That a plaintiff has suffered a deprivation of federal rights at the hands

of a municipal employee will not alone permit an inference of municipal culpability and causation

. . .").  Instead, it is only when the execution of a government's policy or custom inflicts the injury

complained of that the government as an entity can be held liable under § 1983.  *Monell*, 436 U.S.

at 694.  Thus, to succeed on such a claim, a plaintiff must demonstrate a direct causal link between

the policy or custom of the government and the constitutional deprivation by showing that the

alleged injury was caused by the execution of the particular policy or custom. *Garner v. Memphis*

-12-

Case No.  4:09-CV-1931
Gwin, J.

*Police Dep't*, 8 F.3d 358, 364 (6th Cir.1993).

A "policy" is "formal rules or understanding-often but not always committed to writing-that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986). A "custom" may be the basis of governmental liability if it is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Monell*, 436 U.S. at 690-91.  To establish the existence of such a "custom or policy," Plaintiffs must show specific facts supporting their claim; mere conclusory allegations of policy or custom are insufficient.  *See Culberson v. Doan*, 125 F. Supp. 2d 252, 273 (S.D. Ohio 2000).

Here, the Plaintiffs fail to produce a single fact to support their *Monell* claim.  In fact, Plaintiffs do not mention "custom" and only mention "policy" once in their complaint: "[The] Mahoning County Children Services Board . . . and Brad Price proceeded with action against Plaintiffs all in a manner that neither followed a set policy or procedure of such board." [Doc. 1 at 10.] Accordingly, Defendants are entitled to summary judgment on the Plaintiffs' official capacity claim.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendants' motion for summary judgment and dismisses all claims against all Defendants.

IT IS SO ORDERED.


Dated: August 20, 2010                    *s/   James S. Gwin*
                                          JAMES S. GWIN
                                          UNITED STATES DISTRICT JUDGE